UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LENCY DONNELL AUGUST,** | |
| **Plaintiff,** | |
| v. | Civil Actions 2:25-cv-915; 2:25-cv-1010; 2:25-cv-1234 |
| **WARDEN JAMES J. FORSHEY,** *et al.*, | Chief Judge Sarah D. Morrison<br>Magistrate Judge Chelsey M. Vascura |
| **Defendants.** | |

## ORDER and REPORT AND RECOMMENDATION

Plaintiff, Lency Donnell August, an Ohio inmate who is proceeding without the assistance of counsel, brings claims under 42 U.S.C. § 1983 against Warden James J. Forshey ("Warden Forshey"); Correctional Officer Larrison ("CO Larrison"); Correctional Officer D. Stack ("D. Stack"); and Correctional Officer M. Stack ("M. Stack"). This matter is before the Court for the initial screen of Plaintiff's Complaint (ECF No. 1)[1], under 28 U.S.C. §§ 1915(e)(2) and 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Amended Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1)–(2); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). Having performed the initial screen, it is **RECOMMENDED** that

---

[1] Plaintiff has submitted identical copies of his Complaint in three different actions. Citations are to the filings docketed in 2:25-cv-915.

Plaintiff be permitted to proceed with his excessive force claim against D. Stack in his individual capacity and that Plaintiff's other claims be **DISMISSED**.

This matter is also before the Court for consideration of Plaintiff's motion for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) and (2), which is **GRANTED**. (ECF No. 2.) Plaintiff must pay the full amount of the Court's $350 filing fee. 28 U.S.C. § 1915(b)(1). Plaintiff's certified trust fund statement reveals that he has $.04 in his prison account.

Pursuant to 28 U.S.C. § 1915(b)(1), the custodian of Plaintiff's inmate trust accounts (Inmate ID Number A787408) at Richland Correctional Institution ("RCI") is **DIRECTED** to submit to the Clerk of the United States District Court for the Southern District of Ohio as an initial partial payment, 20% of the greater of either the average monthly deposits to the inmate trust account or the average monthly balance in the inmate trust account, for the six months immediately preceding the filing of the Complaint.

After full payment of the initial, partial filing fee, the custodian shall submit 20% of the inmate's preceding monthly income credited to the account, but only when the amount in the account exceeds $10.00, until the full fee of $350.00 has been paid to the Clerk of this Court. 28 U.S.C. § 1915(b)(2). *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Checks should be made payable to: Clerk, United States District Court. The checks should be sent to:

> Prisoner Accounts Receivable
> 260 U.S. Courthouse
> 85 Marconi Boulevard
> Columbus, Ohio 43215

The prisoner's name and this case number must be included on each check.

It is **ORDERED** that Plaintiff be allowed to prosecute his action without prepayment of fees or costs and that judicial officers who render services in this action shall do so as if the costs

had been prepa*Id.* The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff and the prison cashier's office.

## I. STANDARD OF REVIEW

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e):

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> * * *
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious; [or]
>
> (ii) fails to state a claim on which relief may be granted. . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted. *See also* 28 U.S.C. § 1915A (requiring a court to conduct a screening of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity . . . [to] identify cognizable claims or dismiss the complaint, or any portion of the complaint [that is] frivolous, malicious, or fails to state a claim upon which relief may be granted").

Further, to state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "detailed factual allegations, a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A complaint will not "suffice if it tenders naked assertion devoid of further factual enhancement." *Id.* (cleaned up). Instead, to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* (cleaned up). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers." *Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "courts should not have to guess at the nature of the claim

asserted." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## II.     BACKGROUND

Plaintiff, who is Muslim, alleges all the following. (ECF No. 1–4, PageID # 18.) Plaintiff was previously incarcerated at Noble Correctional Institute ("NCI"). NCI policy designates the area next to an inmate's bunk for prayers. (*Id.*) On the evening of August 6, 2024, Plaintiff was praying in that location. (*Id.*) CO Larrison demanded that Plaintiff stop praying and told him that he could not pray there even though other officers on different shifts had never said anything about his prayer practice. (ECF No. 1–2, PageID # 15.) CO Larrison also kicked Plaintiff's sutrah, stepped on his prayer rug, and threatened to confiscate it. (ECF No. 1–4, PageID # 18.) Plaintiff requested a supervisor, and during a pat down, a yard officer snatched his kufi from his head and threw it on the floor. (*Id.*) When Plaintiff bent to retrieve it, CO Larrison yelled at him to "leave it there." (*Id.*) When Plaintiff yelled back that he would not, CO Larrison handcuffed him with restraints purposely tightened to cut off his circulation. (*Id.*) Plaintiff was placed in handcuffs even though he told CO Larrison that he needed his cane to walk. (ECF No. 1–2, PageID # 15.)

Plaintiff also alleges that on December 2, 2024, he was reclining in his bunk when M. Stack instructed him to reposition his television. (ECF No. 1–5, PageID # 19.) When he questioned her, she became loud and aggressive. (*Id.*) Plaintiff agreed to move his television but D. Stack, who is M. Stack's son, arrived on the scene. (*Id.*) Plaintiff repositioned his television while M. Stack made derogatory remarks to him before walking away. (*Id.*) Plaintiff continued to reposition his television while both officers watched from approximately ten feet away. (ECF No. 1-6, PageID # 20.) After they heard Plaintiff talking about them to a nearby inmate, they rushed over, and D. Stack radioed for assistance. (*Id.*) Plaintiff was taken "up front" and patted

5

down. (ECF No. 1–7, PageID # 21.) He complied with pat down procedures and stood against a wall. (*Id.*) During the pat down D. Stack stood closer to Plaintiff than necessary and yanked his right hand from the wall and repositioned it while M. Stack lightly but repeatedly kicked the inside of his right ankle to get him to spread his legs further apart. (*Id.*) When Plaintiff briefly removed his right hand from the wall to remove a beard hair from his mouth, D. Stack immediately sprayed his eyes, nose, and mouth with mace. (*Id.*) Other officers also appeared and tackled Plaintiff before lifting him and escorting him from the building. (*Id.*) D. Stack screamed expletives while Plaintiff was taken away but then quietly left his post to follow the escort. (*Id.*) Plaintiff requested medical treatment but was only provided water. (ECF No. 1, Page ID # 6.) A subsequent investigation, including video review, found that Plaintiff was cooperative, not argumentative or resisting and that his brief hand movement appeared reflexive. (ECF No. 1–8, PageID # 22.) The investigation determined that Plaintiff did not violate any conduct rules. (*Id.*)

Plaintiff contends that he suffered discrimination based on his religion and race and unprofessional misconduct. He indicates that he was not physically injured during the August 2024 events but that the December 2024 events caused injuries to his nose, mouth, throat, and right elbow as well as continued light sensitivity in his left eye. He sues all Defendants in their individual and official capacities, and he seeks $75,000 in actual and punitive damages. (ECF No. 1, PageID # 6.)

### III.     ANALYSIS

**A.     Official-Capacity Claims Against All Defendants**

To the extent Plaintiff sues Defendants in their official capacities, his claims must be **DISMISSED** under the doctrine of sovereign immunity. The Eleventh Amendment operates as a bar to federal-court jurisdiction when a private citizen sues a state or its instrumentalities unless the state has given express consent. *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100

(1983); *Lawson v. Shelby Cty.*, 211 F.3d 331, 334 (6th Cir. 2000). A suit against a state official in his or her official capacity is "not a suit against the official but rather is a suit against the official's office," and is therefore "no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "There are three exceptions to sovereign immunity: (1) when the state has waived immunity by consenting to the suit, (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies." *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017) (citation omitted).

None of these exceptions apply. First, "Ohio has not waived sovereign immunity in federal court." *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Second, "Section 1983 does not abrogate Eleventh Amendment immunity." *Boler*, 865 F.3d at 410 (citing *Will*, 491 U.S. at 66). Third, the *Ex Parte Young* doctrine applies only when a plaintiff brings "claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations." *Boler*, 865 F.3d at 412. Plaintiff's claim for damages—the only form of relief he seeks—falls outside the scope of *Ex Parte Young*. Accordingly, his official-capacity claims against all Defendants must be dismissed.

B.     **Individual-Capacity Claims Against Warden Forshey**

Plaintiff's individual-capacity claims against Warden Forshey must also be **DISMISSED** for failure to allege that Warden Forshey was personally involved in Plaintiff's injuries. To prevail on a § 1983 claim, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). To establish the second element, a plaintiff must show "personal involvement" by the defendant. *Grinter v. Knight*, 532

F.3d 567, 575 (6th Cir. 2008) (citation omitted). This is because "§ 1983 liability cannot be imposed under a theory of *respondeat superior*." *Id.* (citation omitted). Thus, to hold a supervisor liable under § 1983, a plaintiff "must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (cleaned up).

Plaintiff does not, however, allege that Warden Forshey implicitly authorized, approved, or knowingly acquiesced in the other named Defendants' allegedly unconstitutional conduct. Accordingly, Plaintiff's individual-capacity claims against Warden Forshey must be dismissed.

C.     **Individual-Capacity Claims Against CO Larrison**

All of Plaintiff's individual-capacity claims against CO Larrison must also be **DISMISSED**. Again, to prevail on a § 1983 claim, a plaintiff must plead: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *See Hunt*, 542 F.3d at 534 (citing *McQueen*, 433 F.3d at 463). Plaintiff's individual-capacity claims fail on the first element—he fails to allege a violation of his constitutional rights.

1.     **Free Exercise**

The undersigned construes Plaintiff's Complaint as making a claim against CO Larrison under the First Amendment to the United States Constitution, which states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . " U.S. Const. amend. I. This free exercise protection extends to inmates. *Hayes v. Tenn.*, 424 F. App'x 546, 549 (6th Cir. 2011).

To state a free-exercise claim under § 1983, an inmate must allege that a belief or practice "is religious in [his] own scheme of things," is sincerely held, and that prison officials have infringed that belief or practice. *Pryor v. Chambers-Smith*, No. 24-3301, 2025 WL

8

1090997, at *2 (6th Cir. Apr. 2, 2025) (quoting *Kent v. Johnson,* 821 F.2d 1220, 1224-25 (6th Cir. 1987). An inmate must also allege that the prison officials' infringement constitutes a substantial burden on his sincerely held religious belief. *Mustin v. Wainwright*, No. 23-3671, 2024 WL 3950810, at *2 (6th Cir. Aug. 27, 2024) (citations omitted). Prison officials substantially burden a prisoner's religious exercise if they place "substantial pressure on an adherent to modify his behavior and to violate his beliefs" or "effectively bar" his sincere faith-based conduct. *Haight v. Thompson,* 763 F.3d 554, 565 (6th Cir. 2014) (cleaned up). Minor or isolated incidents do not, however, create a substantial burden. *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (finding that isolated incidents of serving nonkosher food to an inmate was insufficient to sustain a free exercise claim).

Here, Plaintiff alleges that CO Larrison's actions prevented him from praying on only one occasion. Plaintiff's filings, in fact, indicate that other officers on different shifts never said anything about his prayer practice. (ECF No. 1–2, PageID # 15.) CO Larrison's interference with Plaintiff's prayer practice was thus *de minimis* and does not constitute a substantial burden on his religious exercise. *See e.g.*, *Dykes v. Schroeder*, No. 2:22-CV-110, 2022 WL 2167727, at *4 (W.D. Mich. June 16, 2022) (inmate's inability to read a proclamation or conduct a closing prayer for four days when worship services were shortened was a *de minimis* burden on his Moorish Science Temple practice); *Mubashshir v. Moore*, No. 3:10 CV 2802, 2011 WL 1496670, at *6 (N.D. Ohio Apr. 19, 2011) (denying inmates services in chapel on two occasions were isolated instances that did not constitute a substantial burden on a Muslim inmate's religious freedom); *Crump v. Winn*, No. 11-10409, 2012 WL 1033663 (E.D. Mich. Mar. 5, 2012) (missing prayer on two occasions as a result of a schedule change was not a substantial burden), *adopted and aff'd*, 2012 WL 1021711, at *1 (E.D. Mich. Mar. 27, 2012). Plaintiff's First

9

Amendment claim against CO Larrison in his individual capacity must, therefore, be **DISMISSED**.

### 2.  Equal Protection

The undersigned also construes Plaintiff's Complaint as making a claim against CO Larrison under the Fourteenth Amendment's equal protection clause, which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This clause "embodies the principle that all persons similarly situated should be treated alike." *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006) (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439(1985)).

"[T]o establish an equal protection violation, an inmate must establish more than differential treatment alone—a discriminatory intent or purpose is required." *Maye v. Klee*, 915 F.3d 1076, 1085, (6th Cir. 2019). Thus, an inmate adequately states an equal protection claim if he alleges that (1) he was treated disparately from similarly situated prisoners, and (2) the disparate treatment "is the result of intentional and purposeful discrimination." *Robinson v. Jackson*, 615 F. App'x 310, 314–15 (6th Cir. 2015).

Here, Plaintiff fails to plausibly allege any facts suggesting that CO Larrison treated him differently than other similarly situated individuals. Indeed, Plaintiff does not allege any facts about how CO Larrison treated other inmates, let alone ones who were similarly situated in all relevant respects. Nor does Plaintiff allege that CO Larrison's actions were accompanied by racial or religious slurs or epithets or conduct from which a discriminatory animus could be inferred. Instead, Plaintiff states that he experienced discrimination and that his religious rights to pray were violated by racist staff. (ECF No. 1–2, PageID # 15; ECF No. 1–9, PageID # 23.) Such conclusory allegations are insufficient. *See Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th

Cir. 2008) ("[C]onclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim.") (quoting *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)). Consequently, Plaintiff's Equal Protection claims against CO Larrison in his individual capacity must be **DISMISSED**.

### 3. Excessive Force

The undersigned additionally construes Plaintiff's Complaint as making an excessive force claim against CO Larrison in violation of the Eight Amendment, which prohibits the unnecessary and wanton infliction of pain against prisoners. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citing *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). To make out a claim under the Eighth Amendment, a prisoner must satisfy both an objective and a subjective component. *Id.* (citing *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir.1993)).

The objective component requires the pain inflicted to be "sufficiently serious." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). Yet the seriousness of the injuries is not by itself dispositive. *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010) (per curiam). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

The subjective component focuses on the state of mind of the prison officials. *Williams*, 631 F.3d at 383. The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 449 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7).

Here, any claim that Plaintiff intends to advance arising out of CO Larrison's handcuffing him fails to satisfy the objective component. Plaintiff alleges that CO Larrison handcuffed him with "restraints purposely tightened to cut off circulation." (ECF No. 1–4, PageID # 18.) But Plaintiff additionally alleges that no injuries were inflicted on him during that August 6, 2025 incident involving CO Larrison. In the absence of allegations that the handcuffs caused pain, lasting injury, or were inflicted in a manner "repugnant to the conscience of mankind," this type of *de minimis* use of physical force is "necessarily exclude[d] from constitutional recognition." *Hudson*, 503 U.S. at 9–10 (quoting *Whitley,* 475 U.S. at 327). Therefore, Plaintiff's excessive force claim against CO Larrison in his individual capacity must be **DISMISSED**.

### D. Individual-Capacity Claims Against M. Stack and D. Stack

The Court also construes Plaintiff's Complaint as making equal protection, excessive force, and medical indifference claims against M. Stack and D. Stack. These claims fail, in part, because Plaintiff does not adequately allege violations of his constitutional rights.

#### 1. Equal Protection

Plaintiff fails to adequately allege an equal protection claim against these Defendants. As previously explained, an inmate adequately states an equal protection claim if he alleges that (1) he was treated disparately from similarly situated prisoners, and (2) the disparate treatment "is the result of intentional and purposeful discrimination." *Robinson*, 615 F. App'x 314–15. Once again, however, Plaintiff fails to plausibly allege any facts suggesting that these Defendants treated him differently than other similarly situated individuals. Although Plaintiff alleges, for instance, the existence of "racial disrespect," "white racism among staff," and "institutional racism," he fails to make particularized allegations about how M. Stack and D. Stack treated other similarly situated inmates. (ECF No. 1, PageID # 5.) Nor does Plaintiff allege that these Defendants' actions were accompanied by racial or religious slurs or epithets or conduct from

12

which a discriminatory animus could be inferred. Although Plaintiff states M. Stack made derogatory statements to him while he repositioned his television, he does not allege that these derogatory statements were race-based. (ECF No. 1–5, PageID # 19.) Other expletives allegedly screamed by D. Stack after he was maced were not racial. (ECF No. 1–7, PageID # 21.) Accordingly, Plaintiff's equal protection claims against M. Stack and D. Stack in their individual capacities must be **DISMISSED**.

    2.    **Excessive Force**

Plaintiff also fails to adequately plead an excessive force claim against M. Stack. As noted, to make out a claim under the Eighth Amendment, a prisoner must satisfy both an objective and a subjective component. The objective component requires the pain inflicted to be "sufficiently serious." *Wilson,* 501 U.S. at 298. Here, Plaintiff does not allege that that M. Stack's actions caused him sufficiently serious pain. Plaintiff alleges only that M. Stack lightly but repeatedly kicked the inside of his right ankle to get him to spread his legs further apart while he was being patted down. (ECF No. 1–7, PageID # 21.) Because he does not allege that this light kicking caused pain, lasting injury, or that it was inflicted in a manner "repugnant to the conscience of mankind," it constitutes a *de minimis* use of physical force that is "necessarily exclude[d] from constitutional recognition." *Hudson*, 503 U.S. at 9–10 (quoting *Whitley,* 475 U.S. at 327). Therefore, Plaintiff's excessive force claim against M. Stack in her individual capacity must be **DISMISSED**.

    3.    **Medical Indifference**

Plaintiff additionally fails to adequately allege a medical indifference claim against M. Stack and D. Stack. It is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate

indifference toward [his] serious medical needs." *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations omitted). A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The United States Court of Appeals for the Sixth Circuit has explained:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004).] The subjective component regards prison officials' state of mind. *Id.* Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted).

*Barnett v. Luttrell*, 414 F. App'x 784, (6th Cir. March 10, 2011); *see also Jones*, 625 F.3d at 941 ("[T]he prison official must have acted with a state of mind similar to recklessness. Thus, to prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk." (citations omitted)).

> The Sixth Circuit has also noted that in the context of deliberate indifference claims:
>
> "[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id.* However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id.*

*Alspaugh*, 643 F.3d at 169. *See also Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) ("If the plaintiff's claim, however, is based on the prison's failure to treat a condition adequately . . . the plaintiff must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." (internal quotation marks and citation omitted)). "In examining whether a claimed injury is 'sufficiently serious'" to sustain a claim for deliberate

14

indifference, "courts look to the *effect* of any delay in treatment caused by an officer's inaction." *Vaughn v. City of Lebanon*, 18 F. App'x 252, 274 (6th Cir. 2001) (emphasis in original). Specifically, a plaintiff "who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* (citing *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001)).

Here, Plaintiff fails to allege that either M. Stack or D. Stack was subjectively aware of facts indicating that Plaintiff faced a substantial risk of serious harm, or that either one consciously disregarded such a known risk. Plaintiff alleges that after he was maced by D. Stack, other officers tackled him, lifted him up, and escorted him out of the building. (ECF No. 1–7, PageID # 21.) He further alleges that he requested medical treatment but was only given water. (ECF No. 1, Page ID # 6.) But he does not allege that he made this request to M. Stack or D. Stack, or that they were aware that he had requested treatment after he was escorted away. Although Plaintiff indicates that D. Stack "quietly followed" during his escort, he also appears to indicate he later learned this from another prison official. (*Id.*) Based on Plaintiff's filings, it therefore appears that he had no interactions with D. Stack or M. Stack after the macing, and he does not allege that he requested medical care from either of them. Therefore, Plaintiff's medical indifference claims against these Defendants must be **DISMISSED**.

## IV. DISPOSITION

Plaintiff's Motion for Leave to Proceed *in forma pauperis* (ECF No. 2) is **GRANTED**. For the forgoing reasons, it is further **RECOMMENDED** that Plaintiff be permitted to proceed on his individual-capacity claim against D. Stack for use of excessive force (arising from the use of mace during the pat down in December 2024), and that the Court **DISMISS** all of Plaintiff's

15

remaining claims because they are barred by immunity or fail to state a claim upon which relief may be granted.

## **PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED**.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

16